*In re* GUARDIANSHIP OF JORDAN M. C.-M., a Minor (Catherine Marsh, Petitioner-Appellant, v. Irene Cullers, Respondent-Appellee).

Fourth District    No. 4—04—0180

Argued July 14, 2004.—Opinion filed August 11, 2004.

Barry G. Lowy (argued), of Equip for Equality, of Springfield, for appellant.

R. John Alvarez (argued), of Springfield, for appellee.

Allen J. Oehlert, of Springfield, guardian *ad litem*.

JUSTICE TURNER delivered the opinion of the court:

Petitioner, Catherine Marsh, appeals from the trial court's denial of her motion to vacate guardianship and to dismiss a January 1, 2002, order that she contends granted respondent, Irene Cullers, Marsh's adoptive mother, custody over the minor child, Jordan M. C.-M. Marsh argues (1) the court erred as a matter of law in denying her motion to dismiss because the order was entered without proper pleading and notice to her; (2) Cullers lacked standing to seek custody of Jordan; (3) the court erred as a matter of law by stating that Marsh bears the burden of proving her fitness; and (4) the court erred in determining that Marsh's fitness and the best interests of the child would be decided simultaneously. We affirm.

## I. BACKGROUND

On March 15, 2000, Marsh gave birth to Jordan. At the time of Jordan's birth, he and Marsh resided with Cullers. Sometime later, Marsh and Jordan moved in with Mark Allen Nelson, Jordan's putative father.

On September 28, 2000, Cullers filed a petition for guardianship of Jordan. Shortly after filing this petition, Cullers filed a petition for temporary guardianship over Marsh. The date of this petition is not available in the record. Marsh and Jordan then moved back in with Cullers. Marsh consented to the guardianships. On November 15, 2000, the trial court entered two guardianship orders. The first was an agreed order appointing Cullers as temporary disabled adult guardian for the estate and person of Marsh for reason of her manic-depressive disorder. The second order (guardianship order) appointed

Cullers as guardian over the estate and person of Jordan. The letters of the office also filed that day stated that "[Cullers] [had] been appointed plenary guardian of the estate and person of [Jordan], a minor, and [was] authorized to have under the direction of the court *** the custody of the ward, and to do all acts required of her by law."

On November 30, 2000, Nelson filed a petition to revoke Cullers' guardianship over Jordan. On January 25, 2001, the trial court entered an order allowing Cullers to voluntarily withdraw her petition for temporary guardianship over Marsh and revoked the guardianship. The court issued a second order in Jordan's case that denied Nelson's petition to revoke Cullers' guardianship over Jordan, revoked Cullers' temporary guardianship over Marsh, and granted Nelson supervised visitation with Jordan upon proof of paternity. Marsh and Jordan continued to reside with Cullers.

On February 2, 2001, Nelson filed a second petition to revoke guardianship. On March 7, 2001, Nelson failed to appear at the hearing on the petition and the trial court denied the petition to revoke.

On January 22, 2002, the trial court amended the guardianship order (amended order) and added the language that Cullers "shall be recognized as the custodial caregiver of the minor." No motion was filed seeking custody, and Marsh received neither notice seeking the entry of the order nor proof of service showing that the order was served on her. Sometime thereafter, Cullers and her husband separated. Marsh continued to live with her father, Cullers' husband, while Cullers moved with Jordan to another residence.

On March 1, 2002, Marsh filed a petition to revoke guardianship. On May 23, 2002, the court appointed Allen Oehlert guardian *ad litem* for Jordan. On November 6, 2003, Marsh filed a motion to dismiss pursuant to sections 2—619(a)(1) and (a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(1), (a)(9) (West 2002)) to vacate Cullers' guardianship and the amended order. On January 28, 2004, the trial court denied Marsh's motion. During the hearing, the trial judge stated that Marsh bears the burden of proof in proceedings relating to Jordan's custody, including her own fitness. To facilitate this appeal, Marsh then withdrew her petition to revoke guardianship. This appeal followed.

## II. ANALYSIS

■ Initially, we grant Marsh's motion to supplement the record on review with the November 15, 2000, order granting Cullers temporary guardianship over the estate and person of Marsh.

Marsh argues that the January 2002 amended order granted Cullers custody of Jordan and that it was obtained without a petition seek-

ing to modify the guardianship being filed, without written consent or stipulation, and without notice to her. To aid in our review of this case, we must first determine when and if Cullers was granted custody of Jordan.

## A. Guardianship and Custody

On November 15, 2000, Cullers was appointed guardian of Jordan's estate and person. The Probate Act of 1975 (Probate Act) (755 ILCS 5/1—1 through 5/30—3 (West 1998)) provides that a guardian of the estate "shall have the care, management[,] and investment of the estate" (755 ILCS 5/11—13(b) (West 1998)), while "[t]he guardian of the person shall have the *custody*, nurture[,] and tuition and shall provide education of the ward" (emphasis added) (755 ILCS 5/11—13(a) (West 1998)). Thus, in 2000, when Cullers was appointed Jordan's guardian, she was also granted custody of Jordan.

In her brief, Marsh admits that she agreed to the 2000 guardianship appointment, although she asserts it was only for a temporary basis. The record before this court does not support this claim. On November 15, 2000, the trial court entered two guardianship orders, a temporary guardianship order for Marsh and a permanent guardianship order for Jordan. The difference in the two orders suggests Marsh was at least aware of the difference between a temporary and permanent guardianship order. Additionally, the record does not contain the transcripts from the guardianship hearing. Without a complete record, we presume the court's permanent guardianship order was supported by a sufficient factual basis. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 459 N.E.2d 958, 959 (1984) ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant").

Contrary to Marsh's assertion, the amended order did not alter Cullers' role as guardian or grant her additional rights. The amended order simply added the language "shall be recognized as the custodial caregiver of the minor." The statement was a clarification of rights already granted. While Marsh states she never voluntarily relinquished custody of Jordan to Cullers, she ultimately did when she agreed to Cullers' 2000 guardianship appointment. Under the Probate Act, Cullers was granted custody of Jordan when she was initially appointed guardian of his person.

## B. Motion To Dismiss

■ In her motion to dismiss, Marsh asked the trial court to vacate the amended order and vacate the guardianship of Jordan pursuant to sections 2—619(a)(1) and (a)(9) of the Code of Civil Procedure for lack of jurisdiction and standing.

A section 2—619 motion to dismiss must be filed "within the time for pleading." 735 ILCS 5/2—619 (West 2002). No pleadings relevant to this motion were pending before the court when the motion was filed. In fact, the guardianship order was filed in 2000, three years before Marsh filed her motion; the amended order was filed in January 2002, nearly two years earlier. The clear language of the statute, along with Illinois case law, makes clear that a section 2—619 motion is only appropriate to attack pleadings, not an order. 735 ILCS 5/2—619 (West 2002); *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382, 808 N.E.2d 957, 961 (2004) (a section 2—619 motion admits the legal sufficiency of the plaintiff's claim but asserts defects or defenses outside the pleading to defeat the claim); *Miller v. Highway Commissioner of North Otter Township Road District*, 344 Ill. App. 3d 1157, 1164, 801 N.E.2d 599, 605 (2003) ("[s]ection 2—619 motions to dismiss provide a means for disposing of issues of law or easily proved issues of fact"). Marsh points us to no contrary authority.

Section 2—1401 of the Code (735 ILCS 5/2—1401 (West 2002)) does, however, permit a party to seek relief from a final judgment more than 30 days after judgment has been entered. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101, 776 N.E.2d 195, 200 (2002). Because the character of the motion, not the label, is controlling for purposes of review, we will treat Marsh's petition as a section 2—1401 motion. See *Sarkissian*, 201 Ill. 2d at 102-03, 776 N.E.2d at 200-01 (the court treated a motion to vacate a default judgment as void on the grounds that service of process was defective as a section 2—1401 motion).

A section 2—1401 petition must be filed within two years of the challenged order unless the party seeking relief makes a clear showing that it was under a legal disability or duress or the grounds for relief were fraudulently concealed. 735 ILCS 5/2—1401(c) (West 2002); *People v. Pinkonsly*, 207 Ill. 2d 555, 562, 802 N.E.2d 236, 241 (2003). The moving party must also allege a meritorious defense or claim to the original action and show due diligence in presenting the claim to the trial court in the original action. *Sarkissian*, 201 Ill. 2d at 103, 776 N.E.2d at 201.

Marsh filed the motion to dismiss on November 6, 2003, more than 30 days, but less than 2 years, after the amended order was entered. She alleges both her lack of notice of the amended order and Cullers' lack of standing to seek custody support the motion.

### 1. *Standing*

■ Marsh's argument that Cullers did not have standing lacks merit. When Marsh consented to the guardianship order, she waived

any right to challenge Cullers' standing. Marsh cannot consent to the appointment of a guardian over her minor child and then later argue the appointed party lacked standing.

Further, Marsh failed to raise any argument of standing in the trial court until more than three years after Cullers was appointed guardian and has thus forfeited the issue on review. See *In re A.W.J.*, 197 Ill. 2d 492, 496, 758 N.E.2d 800, 803 (2001) (lack of standing to file a custody petition under section 601(b) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/601(b) (West 1998)) is an affirmative defense that is forfeited if not pled); *In re Person & Estate of Newsome*, 173 Ill. App. 3d 376, 379, 527 N.E.2d 524, 525 (1988) ("the standing requirement of the [Dissolution] Act applies equally to the guardianship proceedings of the Probate Act").

## 2. *Notice*

■ A review of the record supports Marsh's contention that the guardianship order was amended without a written petition to amend the order or proof of service. However, the language of the amendment does not affect either Marsh's or Cullers' custody rights as to Jordan; it merely clarifies what rights were already granted. As such, we find any error in failing to give Marsh notice of the amended order was harmless.

## C. Petition To Revoke Guardianship

■ Marsh's other arguments concern who carries the burden of proof and what factors are relevant in a petition to revoke guardianship. These arguments are not pertinent to Marsh's appeal from the trial court's denial of her motion to dismiss. Further, Marsh withdrew her petition to revoke guardianship to facilitate this appeal; thus, the arguments are moot. Nonetheless, we recognize that Marsh has the right to petition to revoke guardianship and may wish to do so in the future, thereby raising the issues concerning the burdens and proof required. Although appellate courts generally lack jurisdiction to render advisory opinions, one exception to the mootness doctrine is the public-interest exception. The criteria for this exception are (1) the public nature of the issues presented, (2) the desirability of an authoritative determination for the purpose of guiding public officials, and (3) the likelihood that the question will recur. *In re Mark W.*, 348 Ill. App. 3d 1065, 1069 (2004). Here, we find all three criteria are met and thus point the parties to this court's recent opinion, *In re Estate of K.E.S.*, 347 Ill. App. 3d 452, 461-62, 807 N.E.2d 681, 688-89 (2004).

> "The Probate Act does not address the termination of a guardian prior to the minor reaching the age of majority. [Citation.] The seminal case dealing with the issue of child custody between a

natural parent and third person, *In re Custody of Townsend*, 86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234 (1981), stated that there is 'an accepted presumption that the right or interest of a natural parent in the care, custody[,] and control of a child is superior to the claim of a third person.' The *Townsend* court went on to state that this presumption, also known as the superior-rights doctrine, 'is not absolute and serves only as one of several factors used by courts in resolving the ultimately controlling question of where the best interests of the child lie.' *Townsend*, 86 Ill. 2d at 508, 427 N.E.2d at 1234.

A third party seeking to obtain or retain custody of a child as against the natural parent bears the initial burden. To satisfy this burden, the third party must 'demonstrate good cause or reason to overcome' the superior-rights doctrine and also show that it is in the child's best interest that the third party be awarded custody. *Townsend*, 86 Ill. 2d at 510-11, 427 N.E.2d at 1235-36.

This court, in [*In re Estate of Wadman*, 110 Ill. App. 3d 302, 442 N.E.2d 333 (1982)], concluded that in addition to the requirements in *Townsend*, the natural parent must show a change in circumstances. *Wadman*, 110 Ill. App. 3d at 305, 442 N.E.2d at 335. Otherwise, the *Wadman* court reasoned, the court would merely be ruling on the exact issue it previously decided in awarding guardianship. *Wadman*, 110 Ill. App. 3d at 305, 442 N.E.2d at 335.

Absent statutory standards for termination of guardianship, the *Townsend-Wadman* standards control and govern a natural parent's attempt to terminate a guardianship established under the Probate Act. The court in [*In re Estate of Webb*, 286 Ill. App. 3d 99, 101, 675 N.E.2d 192, 194 (1996)], clarified this standard, stating as follows:

> '[The natural parent] had to show some change in circumstances, or otherwise she could bring frequent petitions to terminate at any time, but first [the guardian] had the burden of proof to overcome the superior-rights doctrine that a parent has a superior right to custody of her minor children. Further, [the guardian] had to show that it was in the children's best interests that she retain the guardianship.' "

■ We interpret *K.E.S.* to mean that in the circumstances of this case, where Cullers was granted plenary guardianship over the person and the estate of Jordan, *with the consent of Marsh*, and has maintained consistent care, custody, and control of Jordan, she has sufficiently shown good cause to rebut the superior-rights doctrine. Thus, to terminate Cullers' guardianship, Marsh has the burden to show a change in circumstances, and then the burden shifts to Cullers to prove it is in Jordan's best interest that she retain guardianship.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.