Sixth Division
December 14, 2007

No. 1-06-3522

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | 02 CR 3010 |
| | ) | |
| BYRON NELSON, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Kenneth Wadas, |
| | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendant Byron Nelson was charged with six counts of first degree murder in the January 2002 death of Cornelius Buchanan. On July 30, 2006, following jury selection, the State asked the trial court to grant use immunity to codefendants Corey Hodges and Jerome Weathers. The trial court denied the State's motion and found that it could not compel Hodges and Weathers to testify against defendant because each had a fifth amendment right against self-incrimination. The State proceeded to trial, but the jury was unable to reach a verdict and a mistrial was declared. After the mistrial, the State filed a notice of appeal and a certificate of substantial impairment in that the court's refusal to grant use immunity had the effect of suppressing evidence and substantially impaired its ability to prosecute the case against defendant.

On appeal, the State argues that the trial court failed to follow the plain, unambiguous and mandatory language of the use immunity statute (725 ILCS 5/106-2.5 (West 2006)) when it refused to grant the State's motion to issue use immunity to codefendants Hodges and Weathers.

The record discloses the following relevant facts. Defendant was charged by indictment

No. 02 CR 3010 with multiple counts of first degree murder in the death of Cornelius Buchanan, which occurred on January 7, 2002, at 5022 South Carpenter in Chicago. Defendant was to be tried simultaneously before separate juries with codefendant Iran Thomas. On October 26, 2006, the trial court conducted jury selection for defendant's trial. On October 30, 2006, immediately prior to the start of the trial, the prosecutor called codefendants Hodges and Weathers to the witness stand outside the presence of the jury. Both men had given videotape statements that implicated themselves as well as defendant and Thomas. The State questioned Hodges first. Hodges admitted that he pled guilty to first degree murder in case No. 02 CR 3010 and was serving a 23-year sentence.

When the prosecutor asked Hodges about his involvement in the January 2002 shooting, Hodges invoked the fifth amendment. The trial court asked Hodges "if [he] were asked additional questions relating to the circumstances of the offense, would [he] take the Fifth, plead the Fifth Amendment on all those subsequent questions?" Hodges replied that he would. In response, the State filed a motion asking the court to grant use immunity to Hodges. Hodges' attorney objected and stated that Hodges' case was up on appeal to withdraw his guilty plea based on ineffective assistance of counsel. After hearing argument from both sides, the trial court denied the State's motion for use immunity and concluded:

> "[Hodges] does in fact have a Fifth Amendment right in light of the
>
> fact that his case, he does – he is appealing his conviction, even
>
> though it was pursuant to a plea, and he could ultimately wind up
>
> back in square one, and I don't think the use immunity offered by

the State is applicable here, and I don't think I can compel him to testify."

Next, the State called codefendant Weathers to the stand. Weathers admitted that he was serving a 75-year sentence for first degree murder in case No. 02 CR 3010. When the State asked Weathers about the circumstances of the January 2002 shooting, Weathers took the fifth amendment. The court asked Weathers if he would take the fifth amendment on additional questions relating to the circumstances surrounding this incident, and Weathers indicated that he would "take the Fifth all the way." The State then requested the trial court to grant use immunity to Weathers. The court denied the State's request for use immunity and noted that, "Weathers' situation is a little bit different than Hodges[']. In reality, my view is that his position is stronger. He contested his guilt throughout a trial, was convicted, and ultimately sentenced, and his case is up on appeal."

In response to the trial court's ruling, the State nol-prossed the charges against codefendant Thomas. Following the trial court's denial of the State's motions for use immunity, defendant's trial began. The following evidence was admitted at trial.

Officers Aaron Cunningham and Eric Majcen of the Chicago police department were on duty from 3 to 11 p.m. on January 7, 2002. Officer Majcen was driving while Officer Cunningham was in the passenger seat. At approximately 6:45 p.m., the officers were patrolling the 9th district because of an ongoing gang conflict between the Black Peace Stones and the Gangster Disciples. They were driving northbound on Peoria at 50th Place when they saw "a group of black males dressed in black" running from the alley at 50th Place across the street in

front of the officers' marked squad car. The men continued to run into the alley on the other side of Peoria.

Officer Cunningham testified that the area was lit by streetlights and the men passed in front of the headlights of the car. He said he was able to see their faces as they ran past. The officers then "activated emergency equipment and began pursuit" of the men into the alley, located near 842 West 50th Place. The men continued to run through the alley until they reached a fence and began to climb it. One of the men fell, but he got up and made it over the fence. Both officers identified the man that fell as codefendant Hodges. Officer Cunningham got out of the car and was able to apprehend one of the men, identified as codefendant Weathers. As Weathers was climbing the fence, his pants were torn and an Ithaca .45-caliber handgun fell out of his pocket. Officer Cunningham took Weathers into custody and recovered the firearm.

A short time later, the officers received word that a possible suspect had been detained one to two blocks away by two other officers. Officers Cunningham and Majcen identified that individual, now known as Hodges, as one of the men they saw running through the alley. Officers Cunningham and Majcen then returned to the area around the fence in the alley to search for other weapons. A Glock 9-millimeter Luger semiautomatic pistol was found on the garage roof adjacent to the yard with the fence. A High Point 9-millimeter handgun was recovered next to a vehicle parked in the yard. A Glock .45-caliber semiautomatic pistol was found at the base of the fence on the alley side where Corey Hodges had fallen to the ground. A few days later, Officer Cunningham helped locate a Jennings 9-millimeter semiautomatic pistol in the yard adjacent to where Weathers was apprehended.

Sergeant Mike Jetel testified that on January 7, 2002, he and his partners, Officers Jack Ryan and Dave Trinidad, were called to the area of 831 West 50th Place to perform a well-being check. Sergeant Jetel described a well-being check as "a call to just check on a citizen that a third party is concerned about."

Sergeant Jetel stated that the address for the well-being check is about a quarter of a block away from 842 West 50th Place. When he received the call for the well-being check, Sergeant Jetel was aware of a shooting that had occurred at 5022 South Carpenter, which was "at the most" two blocks away from 831 West 50th Place. Sergeant Jetel also knew that codefendants Hodges and Weathers had been taken into custody.

The third party who called in the well-being check had been on the phone with her mother when she heard gunshots in the background at her mother's end. Sergeant Jetel went to the address and spoke with the elderly woman, Miss Mitchell. Miss Mitchell indicated that she was "okay" and allowed the officers to enter her residence. The officers looked around and discovered four individuals on the first floor. Sergeant Jetel testified that those individuals were defendant, Iran Thomas, Terry Thomas and Alvin Kendrick. Sergeant Jetel stated that he noticed defendant was sweating profusely, even though it was "pretty cold" outside that day. He said that none of the other individuals were sweating profusely. Sergeant Jetel brought the men out of the house for a "showup" with Officers Cunningham and Majcen.

Officer Cunningham identified defendant as one of the men he pursued down the alley and he did not identify any of the other individuals. Later, Officer Majcen also identified defendant as one of the men he saw running earlier and did not identify any of the others. The State admitted

evidence that a gunshot residue kit had been administered on defendant, and the results indicated that "he discharged a firearm with his left hand or came in contact with a primer gunshot residue related item or was in the environment of a discharged firearm."

Officer John Paulson testified that he is a forensic investigator with the Chicago police department. On January 7, 2002, Officer Paulson responded to the scene of a shooting at the 5000 block of South Carpenter. By the time Officer Paulson had arrived, the victim, Cornelius Buchanan, had been removed. Officer Paulson began to process the scene to recover fired bullets and cartridge cases. Officer Paulson stated that the spread of cartridge cases went across the center of the street near 5022 and 5023 South Carpenter. He also found several fired bullets and bullet fragments inside the victim's car. Officer Paulson also assisted Officers Cunningham and Majcen in the recovery of firearms from the alley at 842 West 50th Place.

Kurt Murray testified that he is a forensic scientist specializing in toolmark and firearm examination with the Illinois State Police Forensic Science Center. Murray examined the five firearms and the cartridges and bullets recovered from the scenes in the alley and the homicide. Murray also received some bullets that were recovered from the victim's body. He found that the cartridges and bullets matched four of the five recovered guns. Murray stated that each of the recovered cartridges and bullets matched the Ithaca .45-caliber pistol, the Glock .45-caliber pistol, the Jennings 9-millimeter pistol, or the Glock 9-millimeter pistol.

Dr. Kendall Crowns testified that he is a forensic pathologist with the medical examiner's office in Chicago. He reviewed the reports and photographs prepared during Buchanan's autopsy. He stated that three bullets were removed from Buchanan's body and given to the

investigation unit of the Chicago police. He found that Buchanan's cause of death was multiple gunshot wounds and the manner was homicide.

A stipulation was entered by the parties that the handguns were tested for fingerprints. One latent fingerprint was found that matched Terry Thomas. No other fingerprints were found. Following the stipulation, the State rested. Defendant moved to suppress Officer Majcen's identification of defendant because at the time of Officer Majcen's identification, defendant was in handcuffs and Officer Majcen knew his partner, Officer Cunningham, had already identified defendant as one of the men the saw running. Defendant also moved to strike the gang testimony as highly inflammatory and highly prejudicial. The trial court denied both motions. Defendant then moved for a directed finding, which the court denied.

At the conclusion of the trial, the jury began its deliberations. Eventually, the jury foreman contacted the trial court and indicated that the jury was unable to reach an unanimous verdict, and a mistrial was declared.

The State filed the instant appeal as well as a certificate of substantial impairment, which certified that the trial court's denial of the State's motions to grant use immunity to Hodges and Weathers had the effect of suppressing evidence and substantially impaired the State's ability to prosecute the case.

Before considering the merits of the State's appeal, we must first determine whether we have jurisdiction over this appeal. Defendant contends that we lack jurisdiction under Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)) for several reasons: (1) the trial court's ruling did not substantially impair the State's ability to prosecute the case; (2) the trial court did not

7

suppress evidence; and (3) the issue is moot. The State alleges that the trial court's refusal to grant use immunity to Hodges and Weathers had the effect of suppressing evidence and that jurisdiction is proper under Rule 604(a)(1).

Supreme Court Rule 604(a)(1) provides:

"In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; suppressing evidence; decertifying a prosecution as a capital case on the grounds enumerated in section 9-1(h-5) of the Criminal Code of 1961; or finding that the defendant is mentally retarded after a hearing conducted pursuant to section 114-15(b) of the Code of Criminal Procedure of 1963." 210 Ill. 2d R. 604(a)(1).

" 'Under the 1970 Illinois Constitution, the final authority to prescribe the scope of interlocutory appeals by the State in a criminal case rests exclusively with this court [citation], and whether a particular order may be appealed depends solely upon our construction of our Rule 604(a)(1).' " People v. Drum, 194 Ill. 2d 485, 488 (2000), quoting People v. Young, 82 Ill. 2d 234, 239 (1980). The interpretation of a supreme court rule, like a statute, is a question of law that we review *de novo*. Drum, 194 Ill. 2d at 488.

In Young, the supreme court held that "Rule 604(a)(1) allows an interlocutory appeal by

1-06-3522

the State of a pretrial suppression order whenever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability to prosecute the case." Young, 82 Ill. 2d at 247. In making this conclusion, the Young court reasoned:

> "The difficulties posed by allowing such appeals, we believe, are outweighed by the need to ensure the accurate interpretation of constitutional and statutory provisions and to protect the ability of the trial process to ascertain the truth of the factual allegations involved in a criminal trial. Pretrial appeals would not be necessary to the realization of these goals if the double jeopardy clauses did not prohibit the retrial of a defendant after an acquittal. Since they do, however, we believe our holding best accommodates the interests of defendants, the judicial system, and society as a whole." Young, 82 Ill. 2d at 247.

The court in Young cited to the federal procedure for support of its application of Rule 604(a)(1):

> " 'An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [sic] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, *not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information*, if the United States attorney certifies to

9

the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.' " (Emphasis added.) Young, 82 Ill. 2d at 248, quoting 18 U.S.C. §3731 (1976).

Additionally, in a case decided the same day as Young, the supreme court addressed the State's ability to appeal a suppression order entered after the jury has been sworn. People v. Flatt, 82 Ill. 2d 250, 254 (1980). In that case, on the day of trial, the defendant brought a motion to produce evidence, a piece of glass that allegedly contained the latent print of the defendant's palm. When the trial court granted the defendant's motion, the State informed the court that the glass might be unavailable. The court indicated that the failure to produce the glass would result in the suppression of the fingerprint evidence at trial. The trial began. The State then told the court that the glass was unavailable. A proceeding was conducted outside the presence of the jury, and at the conclusion, the trial court held that "the failure to produce the glass would result in a deprivation of defendant's due process right to confront evidence presented against him" and the fingerprint evidence would be suppressed. Flatt, 82 Ill. 2d at 256. The State then sought an interlocutory appeal and the jury was discharged. Flatt, 82 Ill. 2d at 256. The supreme court extended the ruling in Young to allow review of midtrial rulings that substantially impair the State's ability to prosecute the case as shown by the certificate of the prosecutor. Flatt, 82 Ill. 2d at 264-65.

In People v. Dorsey, 129 Ill. App. 3d 128 (1984), the first division of this court considered whether the State could appeal a pretrial order after the trial has commenced. The

10

defendant was charged with rape, aggravated kidnaping and robbery. Prior to trial, the defendant filed a motion *in limine* "requesting that, during the State's opening statement and the State's direct examination, no reference be made to the victim's nonidentification of the defendant in both a photographic and lineup confrontation." Dorsey, 129 Ill. App. 3d at 128-29. During the police investigation, the victim viewed a photo array and a lineup, but did not identify anyone in the lineup or the photo array as her attacker. However, defendant was not included in either the lineup or the photo array. Dorsey, 129 Ill. App. 3d at 130. The trial court granted the defendant's motion and instructed the State to refrain from introducing any evidence relating to the victim viewing photographs or a lineup. The court added that, "this evidence could be introduced in rebuttal testimony if that door was opened." Dorsey, 129 Ill. App. 3d at 129.

The jury was impaneled and the trial commenced. During the opening statement, the prosecutor referenced the fact that the victim toured the area with police after the attack to look for her attacker and that the police then questioned a suspect who was not the attacker. The defendant objected that this statement violated the court's order and moved for a mistrial, which the court granted. On appeal, the State filed a certificate of impairment and sought review of the motion *in limine* as well as the order for the mistrial. Dorsey, 129 Ill. App. 3d at 130.

The defendant argued that the State's appeal of the pretrial order on the motion *in limine* was untimely because neither Young nor Flatt "suggests that the State is permitted to proceed to trial after an *in limine* order is entered and to appeal from such order during trial." Dorsey, 129 Ill. App. 3d at 130. The reviewing court agreed with the defendant.

"If the State felt aggrieved or prejudiced when the *in limine* order

11

was entered, the State should have sought appropriate relief. The State took no action and elected to proceed to trial. The State now maintains that the subsequent action in the motion for mistrial presents the right to appeal from the *in limine* order. The State's position assumes the right to forego or delay taking any action to seek immediate review prior to trial from a claimed adverse *in limine* ruling and to interrupt a trial and seek review. We are not aware of any cases sanctioning such practice, and we reject the State's position in this regard. Accordingly, the merits of the trial court's motion *in limine* order will not be considered." Dorsey, 129 Ill. App. 3d at 130.

The instant case presents a situation similar to that in Dorsey. The State requested the grant of use immunity to Hodges and Weathers after the jury had been selected and immediately before trial. When the trial court denied the State's motions, the State took no action and proceeded to trial. Only after the jury was unable to reach a verdict and a mistrial declared did the State seek review. The State fails to cite a case subsequent to Dorsey in which a reviewing court has allowed the State to seek a posttrial appeal of a pretrial order, nor does our research disclose any such case.

Rather, the State contends that Rule 604(a)(1) does not contain any language requiring the appeal to be brought before trial. The State's argument ignores the fact that "whether a particular order may be appealed depends solely upon [the supreme court's] construction of [its]

Rule 604(a)(1)." Young, 82 Ill. 2d at 239. As evidenced by the supreme court's analysis in Young, appeals of pretrial orders are to be made prior to trial. Nothing in the supreme court's decision suggests that the State may wait to seek review of a suppression order in which its ability to prosecute the case was substantially impaired after prosecuting the case. The purpose behind Young was to give the State the opportunity to review orders that substantially impair its case before trial because if the defendant is acquitted, the State is without recourse.

The State's actions in this case are counter to the policies that led to the holding in Young. The public policy behind the supreme court's decisions in Young and Flatt was twofold: (1) the refusal to allow an interlocutory appeal from orders suppressing admissible evidence could seriously impair the State's ability to present its case, and (2) society's interest in reviewing erroneous interpretations and rulings of the trial court to create uniformity in the development of the law. Young, 82 Ill. 2d at 246. By allowing interlocutory appeals, a reviewing court could correct errors that could be lost after trial.

When the State opted to prosecute the case, it essentially took a chance on whether defendant would be convicted without Hodges' and Weathers' testimony. If defendant was found guilty, then the State would have succeeded in its prosecution. If defendant had been acquitted, then no appeal could be brought by the State. The fact that the trial ended in a mistrial should not give the State the right to appeal an order it would have been foreclosed to raise had there been any other result. The State forfeited its right to appeal based on the supposed substantial impairment of its case when it decided to prosecute defendant. The State's appeal under Rule 604(a)(1) is untimely and therefore should be dismissed.

The State contends that the fact the jury was unable to reach an unanimous verdict shows that it was "obviously impaired" in its ability to prosecute the case. The State, however, did present evidence to establish the elements of the first degree murder charge. The State presented the testimony of several police officers and experts. This evidence showed that two officers observed defendant running across the street with several other men in a neighborhood known for gang conflict. When the officers began to pursue the men, they continued to run and climbed a fence to avoid the officers. A codefendant was detained and a gun recovered in the alley. A search of the area found four more firearms. Defendant was later detained by other officers and then identified by the original officers as one of the men they had observed running. Experts matched all of the fired cartridges and bullets recovered from the murder scene to the firearms discovered in the alley in which defendant and the other men fled from police. Additionally, a gunshot residue test performed on defendant tested positive.

We recognize that the supreme court in Young held that courts should "rely solely upon the good-faith evaluation by the prosecutor of the impact of the suppression order on his case." Young, 82 Ill. 2d at 247. However, there is nothing in Young and its progeny to suggest that the State should be allowed to try the case before concluding to what degree the suppression order impacted its case. For the State to do so suggests that the prosecution was not substantially impaired. Even so, there is nothing in the record to explain the reason why the jury was unable to reach a verdict. We decline to speculate as to that reason.

There are two additional reasons why this appeal should be dismissed. First, defendant asserts that this appeal is moot because the conclusion of the first trial foreclosed any issue as to

the use immunity at that trial, and thus, there is no present dispute between the parties. The State argues that there is a present controversy because defendant is awaiting trial and the State wishes to use the testimony of Hodges and Weathers which has been made unavailable to them.

"The existence of an actual controversy is a prerequisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." Yaccino v. State Farm Mutual Automobile Insurance Co., 346 Ill. App. 3d 431, 441 (2004). "An appeal is considered moot where it presents no actual controversy or where the issues have ceased to exist." Yaccino, 346 Ill. App. 3d at 441. We agree with defendant. Since the first trial has concluded, the issue raised by the State relating to that trial is moot.

Second, the question of use immunity as related to retrial is not ripe because the issue has not been raised before the trial court and any opinion by this court would be advisory. Defendant correctly notes that the fifth amendment rights of Hodges and Weathers may change and they may no longer have viable fifth amendment rights, which would negate the need for use immunity. Illinois courts "will not review cases merely to establish a precedent or guide future litigation." Madison Park Bank v. Zagel, 91 Ill. 2d 231, 235 (1982). Because the question of use immunity as related to defendant's retrial is premature, we will not render any advisory opinion to guide the next trial.

At oral arguments, we asked the parties to file written responses addressing the decision in Dorsey. Defendant's response was to argue that the present case should be dismissed based on the ruling in Dorsey. The State, however, asserted that Dorsey was wrongly decided and continues to argue that the case is now in a pretrial position and we are able to consider the trial

court's pretrial denial of the State's motion for use immunity. We disagree with the State. As previously stated, we find Dorsey to be applicable to the instant case. If we were to consider the denial, as the State requests, we would be issuing an advisory opinion. If the State still wishes to seek use immunity for Hodges and Weathers, then it should make a new motion in the course of the pretrial proceedings of the second trial. Such a motion is not frivolous because the fifth amendment rights of Hodges and Weathers at that point should be the basis for the motion, not their invocation of the fifth amendment from the first trial. If that motion is denied, then the proper procedure would be for the State to file its certificate of substantial impairment and bring an appeal, not to proceed to trial as it did here.

Based on the foregoing reasons, we dismiss the State's appeal.

Appeal dismissed.

J.GORDON and O'MALLEY, JJ., concur.