# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re T.P.S.*, 2011 IL App (5th) 100617

---

| | |
|---|---|
| Appellate Court Caption | *In re* T.P.S., a Minor Child, and *In re* K.M.S., a Minor Child (Deanna C.S., Petitioner-Appellee, v. Catherine D.W., Respondent-Appellant). |
| District & No. | Fifth District<br>Docket No. 5–10–0617 |
| Rule 23 Order<br>Motion to Publish<br>Granted | May 11, 2011<br><br>June 20, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where two children were born to one party of a long-term same-sex relationship as a result of artificial insemination and the trial court granted the parties' joint petition to be appointed coguardians of the children, the trial court erred in granting the petition of the children's parent to terminate the guardianships after the parties ended their relationship based on the court's finding that the nonparent lacked standing to oppose the petition, notwithstanding the nonparent's contentions that the parent of the children waived any objection to the nonparent's standing by consenting to the guardianships, failing to object to the guardianships and failing to raise the issue in the trial court, since both the courts and the legislature contemplate a role for an appointed guardian in proceedings to terminate a guardianship, the establishment of a guardianship indicates that the trial court has found that the parent consented to the guardianship or was unable or unwilling to meet the children's needs, and either condition is sufficient to rebut the presumption that the parent's rights preclude the guardian from opposing |

the petition to terminate the guardianship, and in the instant case, the trial court should have determined whether there was a significant change in circumstances or whether the best interests of the children would be served by terminating the guardianships, and therefore, the cause was remanded to allow the court to make those determinations.

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Williamson County, Nos. 06–P–41, 09–P–39; the Hon. Brian D. Lewis, Judge, presiding. |
| Judgment | Reversed; cause remanded. |
| Counsel on Appeal | Michelle M. Schafer, of Marion, and John Knight and Harvey Grossman, both of Roger Baldwin Foundation of ACLU, Inc., and David B. Goroff, Thomas K. Anderson, and Edward W. Diffin III, all of Foley & Lardner LLP, both of Chicago, for appellant. |
| | Teresa Machicao-Hopkins, of Machicao & Associates, of Marion, for appellee. |
| | Michael L. Brody and Tyler G. Johannes, both of Winston & Strawn, LLP, of Chicago, for *amicus curiae*. |
| Panel | PRESIDING JUSTICE CHAPMAN delivered the judgment of the court, with opinion. |
| | Justices Spomer and Wexstten concurred in the judgment and opinion. |

**OPINION**

¶ 1    The parties were involved in a long-term same-sex relationship, during which the petitioner, Deanna C.S. (Dee), gave birth to two children. The respondent, Catherine D.W. (Cathy), became the coguardian of each child pursuant to a guardianship set up for each child shortly after the birth of each. After the parties ended their relationship, Dee sought to terminate the guardianships. The trial court found that Cathy lacked standing to oppose Dee's petitions to terminate because she was not the children's biological or adoptive parent. She now appeals, arguing that (1) Dee waived any objection she might have to Cathy's standing

and (2) the court's ruling was in error. We reverse and remand for further proceedings.

¶ 2    Dee is the biological mother of both of the children involved in this dispute. Both children were conceived by artificial insemination. T.P.S., the older child, was born on January 16, 2006. Shortly thereafter, the parties jointly filed a petition to establish a guardianship for T.P.S. They asked that they be appointed as coguardians of T.P.S. The petition alleged, among other things, that the two women already shared in T.P.S.'s daily care and that they both provided for his financial needs. A court-appointed guardian *ad litem* recommended that the court grant the petition. She stated in her report that Cathy and Dee had been in a "lengthy relationship" and had lived together for five years and that both cared for and loved T.P.S. The court granted the petition and named Cathy and Dee as T.P.S.'s coguardians on September 13, 2006.

¶ 3    K.M.S. was born on October 21, 2008. On March 27, 2009, Dee and Cathy filed a joint petition to establish a guardianship for her, again requesting that Cathy be appointed as a coguardian. Again, a court-appointed guardian *ad litem* recommended granting the petition. In her report, she stated that the two women shared a home and shared in the care of K.M.S. She further noted that Cathy was the primary caregiver for the children during the week. She went on to state that the "parties want to ensure that [Cathy] will be able to access medical care for [K.M.S.]" and that "Cathy would have legal rights to continue caring for [K.M.S.] if something were to happen to Dee." The court granted the petition and appointed Cathy and Dee as coguardians on June 23, 2009.

¶ 4    In September 2009, the parties ended their relationship. On July 21, 2010, Dee filed petitions to terminate both guardianships. She alleged that (1) she is the biological mother of each child, (2) the two parties no longer reside at the same address, and (3) she no longer believes that it is in the best interests of the children for Cathy to serve as a coguardian. On August 9, Cathy filed responses to Dee's petitions, in which she alleged that she had lived with and cared for the children for their entire lives and denied that terminating the guardianships would be in their best interests.

¶ 5    On August 31, 2010, the court held a hearing on the petition. Dee argued that under the superior-rights doctrine, she, as the children's biological parent, had superior rights "over any third parties" to make decisions regarding custody and visitation. She further argued that "the issue should end there and that the court should terminate the guardianship simply because [Cathy] has no other third party standing."

¶ 6    Cathy argued that the superior-rights doctrine is a presumption but is not absolute. She noted that once a guardianship has been established, a biological parent seeking to terminate the guardianship must show that a substantial change in circumstances has occurred and the court must consider whether terminating the guardianship is in the children's best interests.

¶ 7    Cathy then began to outline the evidence she would present relating to the children's best interests. At this point, the court asked, "Where is the standing under the statute?" In response, Cathy contended that she had standing by virtue of having been appointed as the children's coguardian. The following exchange then occurred between the court and counsel for Cathy:

"COURT: Where is the standing for a determination such as this?

MS. SCHAFER: The determination to be made?

COURT: Yeah. Michelle, I understand what's going on here. These two have split up.

MS. SCHAFER: Correct.

COURT: You're wanting to proceed such as in a divorce. I understand that. It's my understanding–and correct me if I'm wrong–that Illinois doesn't recognize this type of a union."

The court then asked, "Where's the standing for a non-parent to raise custodial rights in a circumstance *such as this*?" (Emphasis added.) Counsel replied that Cathy had standing because she was appointed as a coguardian. The court asked Cathy's attorney to point to a case that decided the issue of a nonparent's standing in the specific context of a same-sex couple. Counsel acknowledged that there were no such cases. The court inquired: "Let me ask you this. How do we get it to the appellate court to get it decided?" Counsel argued that cases dealing with the standing of other nonparent guardians in other contexts supported her position that Cathy's status as a coguardian gave her standing.

¶ 8 The court granted the petitions to terminate the guardianship and explained its rationale as follows:

"I think she ought to have the right to come here, and I think she ought to have the right to present evidence, and she ought to have the right to attempt to have custody of these two children. I don't think the law in the state of Illinois gives her that opportunity since she is not related to these children and did not adopt these children. I believe that there is no standing by [Cathy] as the law in Illinois now stands. I don't think I can state it any clearer that I disagree with the law, but I think I am bound to follow that law."

The court then entered a detailed docket entry. In it, the court stated that the issue involved was "[i]n essence *** a dissolution issue with custody, support[,] and visitation at issue." The court went on to state that, because Illinois does not recognize same-sex marriage, the court "has no jurisdiction to engage in a child custody proceeding." The original trial judge resigned from the bench before entering written orders terminating the guardianships. The case was reassigned, and the new judge entered the orders terminating the guardianships on September 15, 2010. Those orders stated only that the court found that Cathy lacked standing.

¶ 9 On October 15, 2010, Cathy filed motions to reconsider. She argued that (1) the court had applied the wrong standard, (2) Dee had not shown a change in circumstances that would justify terminating the guardianships, and (3) termination was not in the children's best interests. On December 7, the court held a hearing on the motion. The court stated, "[T]his is actually a visitation case." The court then reasoned that because Cathy is not a stepparent, grandparent, or other relative, she has no standing to seek visitation with T.P.S. and K.M.S. under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2010)). The court further found that it had no jurisdiction to grant custody to Cathy. On December 16, the court entered a written order finding that Cathy lacked standing and denying her motion to reconsider. Cathy then filed the instant appeal.

¶ 10 The only issue in this appeal is whether Cathy has standing to oppose Dee's petitions to

terminate the guardianships. We note that both parties raise additional issues; however, because the court determined that Cathy lacked standing, it did not consider other issues. Thus, those issues are not before us. See *People v. Nelson*, 377 Ill. App. 3d 1031, 1040-41, 880 N.E.2d 1096, 1104 (2007) (explaining that appellate courts should not consider issues not yet addressed by the trial court because to do so would mean rendering an advisory opinion).

¶ 11 We do not believe that the fact that Cathy and Dee were involved in a same-sex relationship is relevant to our determination of this issue. Cathy alleges that the evidence will show that she and Dee decided to have children together and that both acted as parents to the children. Dee, by contrast, claims that Cathy cared for the children on weekdays "much like a babysitter." The nature of Cathy's relationship with the children may well be relevant to a best-interests determination. It is not, however, relevant to the narrow issue before us. Cathy did not adopt the children, and as she appears to acknowledge, her standing to oppose Dee's petition is governed by the same rules that govern any other guardianship. With this in mind, we turn to the merits of Cathy's contentions.

¶ 12 Cathy first argues that Dee waived her objection to standing. She argues that Dee waived her objection by (1) consenting to the guardianships, (2) failing to object to Cathy's standing at any point during the time the guardianships were in effect (see *In re Guardianship of Jordan M. C.-M.*, 351 Ill. App. 3d 700, 704-05, 814 N.E.2d 232, 236 (2004)), and (3) failing to raise the issue in the trial court. We note that, assuming the issue is waived, waiver acts as a limitation on the parties, not the court. See *In re Michael H.*, 392 Ill. App. 3d 965, 970, 912 N.E.2d 703, 707 (2009). The issue is an important one, and we choose to address it on the merits.

¶ 13 Cathy next contends that the trial court did not apply the correct standard to determine standing to oppose a petition to terminate a guardianship. We agree.

¶ 14 Under the Probate Act of 1975 (Probate Act), standing for a nonparent to initiate a guardianship is limited to instances where the child's parent consents to the guardianship or the child has no living parent who is "willing and able to make and carry out day-to-day child care decisions" for the child. 755 ILCS 5/11–5(b) (West 2008). This limitation exists to protect the parent's superior rights to the custody and care of her child. *In re R.L.S.*, 218 Ill. 2d 428, 434, 844 N.E.2d 22, 27 (2006). At the time the hearings in this case took place, the Probate Act did not include any express provisions relating to standing in the context of a petition to terminate a guardianship. *In re Estate of K.E.S.*, 347 Ill. App. 3d 452, 461, 807 N.E.2d 681, 688 (2004). For this reason, courts created a three-part test to determine whether a nonparent can seek to retain custody of a child in those proceedings. See *In re Estate of K.E.S.*, 347 Ill. App. 3d at 462, 807 N.E.2d at 689. Under these cases, a nonparent guardian who seeks to retain custody of a child must first rebut the presumption that the parent has a superior right to the care and custody of his child. See *In re Custody of Townsend*, 86 Ill. 2d 502, 510-11, 427 N.E.2d 1231, 1235-36 (1981), *overruled on other grounds by In re R.L.S.*, 218 Ill. 2d at 445-48, 844 N.E.2d at 32-34; *In re Estate of K.E.S.*, 347 Ill. App. 3d at 462, 807 N.E.2d at 689. We note that in this case, Dee's right to the care and custody of the children is not in dispute; Cathy seeks only to continue the guardianships under which the two women shared in the care and custody of the children. Thus, in the circumstances presented here, the

issue is simply whether Dee's right to make decisions concerning the care and custody of her two children precludes Cathy from being able to argue that the guardianships should continue.

¶ 15    If the guardian overcomes this presumption, the parent then has the burden of demonstrating that a significant change in circumstances has occurred. *In re Estate of K.E.S.*, 347 Ill. App. 3d at 462, 807 N.E.2d at 689; *In re Estate of Wadman*, 110 Ill. App. 3d 302, 305, 442 N.E.2d 333, 335 (1982). If the parent meets this burden, the burden shifts back to the guardian, who must then show that continuing the guardianship is necessary to protect the best interest of the child. *In re Custody of Townsend*, 86 Ill. 2d at 510-11, 427 N.E.2d at 1235-36; *In re Guardianship of Jordan M. C.-M.*, 351 Ill. App. 3d at 706, 814 N.E.2d at 237; *In re Estate of K.E.S.*, 347 Ill. App. 3d at 463, 807 N.E.2d at 689.

¶ 16    On January 1, 2011, the Probate Act was amended to codify and expand on these rules. Section 11–14.1 now provides that if a parent files a petition to terminate the guardianship, the court "shall *** terminate the guardianship if the parent establishes, by a preponderance of the evidence, that a material change in the circumstances of the minor or the parent has occurred ***; unless the guardian establishes, by clear and convincing evidence, that termination of the guardianship would not be in the best interests of the minor." Pub. Act 96–1338 (eff. Jan. 1, 2011) (adding 755 ILCS 5/11–14.1(b)). The statute goes on to mandate that courts consider "all relevant factors" in making the best-interests determination and lists several of those factors. Pub. Act 96–1338 (eff. Jan. 1, 2011) (adding 755 ILCS 5/11–14.1(b)).

¶ 17    It is clear, then, that both the courts of this state and its legislature contemplate a role for an appointed guardian in proceedings to terminate a guardianship. There are good reasons for this. Once a guardianship has been established, the court has already found either that the parent consented to the guardianship or that the parent was unable or unwilling to meet the child's daily needs. Either of these conditions is sufficient to rebut the presumption that the parent's rights to the care and custody of the child preclude the guardian from having any say in proceedings to terminate the guardianship. The circumstances surrounding a petition to terminate a guardianship are inherently different from those surrounding a petition to establish a guardianship. Here, a court has already found that it was appropriate to grant Cathy the authority to act as the children's guardian. This gives her a cognizable interest in their welfare. Moreover, obviously, the court could not appoint Cathy as a guardian in the first place unless it found that the presumption of the superior-rights doctrine was overcome.

¶ 18    We believe that the rules we have outlined provide adequate protection for Dee's parental rights. Although a nonparent who has been legally appointed as a guardian has standing, other third parties do not. As noted, a guardian can only be appointed where certain conditions are met to begin with. In addition, although a guardian has standing to oppose the termination of a guardianship, she must still prove by clear and convincing evidence that a continuation of the guardianship is in the children's best interests. We therefore conclude that Cathy has standing to oppose Dee's petitions to terminate the guardianships.

¶ 19    For the foregoing reasons, we reverse the trial court's orders terminating the guardianships. Because the court found that Cathy lacked standing, it did not consider

whether there was a significant change in circumstances or whether the best interests of the children would be served by terminating the guardianships. We therefore remand this cause to allow the court to make these determinations.

¶ 20　　　Reversed; cause remanded.