**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200367-U

Order filed July 16, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* GUARDIANSHIP OF JONATHON I.H., a Minor | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois |
| (Heather J.H., | ) ) | |
| Petitioner-Appellee, | ) ) | Appeal No. 3-20-0367 Circuit No. 19-P-60 |
| v. | ) ) | |
| Brandy M. Whiting, | ) ) | Honorable Robert C. Marsaglia |
| Respondent-Appellant). | ) | Judge, Presiding |

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Lytton and Schmidt concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Trial court did not err when it terminated guardianship of minor.

¶ 2     The trial court granted mother's petition to terminate guardianship of her minor child, finding she demonstrated that a material change of circumstances occurred since the guardian was appointed and that termination of the guardianship was in the minor's best interests. The guardian appealed. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On June 18, 2019, respondent Brandy M. Whiting was appointed plenary guardian of the

minor, Jonathon H., on the request of Jonathon's mother and Brandy's friend, petitioner Heather

J. H. On July 12, 2019, Heather petitioned to discharge Brandy as guardian and for the appointment

of other individuals as guardians. The petition was dismissed. In September 2019, Heather moved

to terminate the guardianship and have Jonathon returned to her care. In January 2020, Heather

filed an amended motion to terminate guardianship, requesting that Brandy's guardianship be

discharged and that Sara H., Heather's mother, be appointed guardian. The trial court denied the

motion as the guardianship of Jonathon's person, but named Sara guardian of Jonathon's estate

with letters of guardianship to issue upon Sara's filing of an oath and bond. The record does not

reflect that the oath or bond were filed or that the letters issued. Also in January 2020, Brandy

sought an order of protection against Heather, naming herself and Jonathon as the protected parties.

According to Brandy, Heather and Sara were verbally harassing her. The trial court denied the

request for a plenary order of protection. Heather moved for parenting time, which the court

granted. In the order, contact between Jonathon and Anthony H. was prohibited.

¶ 5        In May 2020, Brandy signed a statement that she could no longer control Jonathon and was

transferring guardianship to Jonathon's uncle, David H. She stated that she was having difficulties

with Heather's family, which caused stress to Jonathon. The statement was notarized. At that time,

David apparently took custody of Jonathon. In June 2020, Brandy petitioned for a rule to show

cause on the basis that David had allowed Jonathon to spend time with Anthony. In July 2020,

Heather filed a second amended motion to terminate Brandy as guardian of Jonathon's person.

¶ 6        A hearing took place on Heather's second amended motion to terminate guardianship. The

report of proceedings does not include the first day of the hearing. The half-sheet indicates that

2

Brandy and David testified. On the second day, David continued his testimony. He was Jonathon's uncle. He felt able to handle his nephew. Jonathon was attending school and was on track with his doctors. His work schedule varied, and when he worked days, he and Jonathon left the house at 4:15 a.m., and Jonathon went to Heather's house until she took him to school. When David worked nights, he took Jonathon to Heather's or Sara's house for those evenings. David was aware of the order prohibiting Anthony from being around Jonathon and explained a picture depicting Jonathon sitting on Anthony's lap was a "real quick family photo." He acknowledged he took Jonathon for a vacation in the Wisconsin Dells during the COVID pandemic but stated they wore masks and socially distanced. He described the vacation as a bonding time.

¶ 7        Angela Fillenwarth testified. She was appointed Jonathon's guardian *ad litem* (GAL). In her opinion, Jonathon would be better served if he were returned to Brandy's custody. She acknowledged Jonathon loved David but raised concerns about David's difficult work schedule. She was also concerned that Heather and her family would not follow the court orders barring contact between Jonathon and Anthony. She believed Jonathon would have a more consistent sleep and eLearning schedule in Brandy's care since Brandy was not employed outside the home. Fillenwarth admitted that Brandy twice sent Jonathon to live with Heather, Sara or David, but attributed those incidents to difficulty Brandy had with Heather and her family rather than problems with Jonathon. She further admitted Brandy had Jonathon hospitalized for mental health services on three occasions, explaining that it was necessary treatment. Fillenwarth opined that Jonathon would be safest living with Brandy, that his care and education were more consistent with her, and that he was healthier in her custody.

¶ 8        Following the hearing, the trial court acknowledged Brandy's letter "transferring" the guardianship to David. The court found that Brandy agreed that Jonathon should live with David

3

but what happened was not consistent with what she agreed and that she was "double-crossed." It noted the constant pressure Brandy faced from Heather's family and applauded her efforts on Jonathon's behalf. The court also recognized that Heather and her family ignored the court's order prohibiting contact between Jonathon and Anthony and warned that any further violations would result in a contempt finding. The court ultimately found that, despite these issues, the focus was Jonathon's best interest and he had done well in David's care and custody. The court further found that the onslaught from Heather's family would not stop, and it was in Jonathon's best interest that he be placed with his family. The trial court terminated Brandy's guardianship and appointed David guardian of Jonathon's person and estate. Brandy appealed.

¶ 9                                II. ANALYSIS

¶ 10        On appeal, Brandy argues that the trial court erred when it terminated her guardianship of Jonathon, asserting termination was not in Jonathon's best interests. She points to several incidents that took place while Jonathon was in David's care as evidence that Jonathon's best interests would be served by her continuation as his guardian.

¶ 11        A petition to terminate a guardianship may be filed by a parent whose parental rights have not been terminated. 755 ILCS 5/11-14.1(b) (West 2018).

> "[T]he court shall discharge the guardian and terminate the guardianship if the parent establishes, by a preponderance of the evidence, that a material change in the circumstances of the minor or the parent has occurred since the entry of the order appointing the guardian; unless the guardian establishes, by clear and convincing evidence, that termination of the guardianship would not be in the best interests of the minor." *Id.*

The court considers the following factors in determining the minor's best interests:

4

"(1) The interaction and interrelationship of the minor with the parent and members of the parent's household.

(2) The ability of the parent to provide a safe, nurturing environment for the minor.

(3) The relative stability of the parties and the minor.

(4) The minor's adjustment to his or her home, school, and community, including the length of time that the minor has lived with the parent and the guardian.

(5) The nature and extent of visitation between the parent and the minor and the guardian's ability and willingness to facilitate visitation." *Id.*

¶ 12    To establish the removal of a guardianship, there are three steps. *In re T.P.S.*, 2011 IL Ap (5th) 100617, ¶ 14. First, the guardian must rebut the presumption that a parent has a superior right to the care and custody of her child. *Id.* If the presumption is rebutted, the parent must demonstrate a significant change in circumstances occurred necessitating removal of the guardian. *Id.* ¶ 15. The guardian may then establish that it would be in the child's best interests that the guardianship is not terminated. *Id.* We will not reverse a trial court's termination of a guardianship unless it was against the manifest weight of the evidence. *In re Estate of K.E.S*, 347 Ill. App. 3d 452, 461 (2004).

¶ 13    To begin, Heather's superior right to the custody of Jonathon has been rebutted by the appointment, on Heather's petition, of Brandy as Jonathon's guardian. See *T.P.S.*, 2011 IL App (5th) 100617, ¶ 14 (where the termination of a guardianship is sought, rather than an appointment, the guardian has already overcome the presumption of the parent's superior rights). We must next consider whether Heather established that a material change in Jonathon's circumstances have occurred since Brandy was appointed guardian. In her second amended petition to terminate Brandy's guardianship, Heather alleged that Jonathon's living conditions at Brandy's were not

5

suitable due to overcrowding where he had to share a bedroom with Brandy, that Brandy failed to facilitate Jonathon's attendance at summer school, that she could not meet his financial needs, that he was hospitalized for emotional and mental issues that arose while in Brandy's care, that Brandy did not have Jonathon attend his follow-up care, and that she did not inform Heather of his medical treatment or allow Heather access to his medical records.

¶ 14    As stated above, the report of proceedings from the first part of the hearing on the second amended petition to terminate are not included in the record. Brandy's testimony took place at that hearing and we thus lack her response to the allegations. As applicant, it was her burden to supply a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Without an adequate record, we presume that the trial court's determination that a material change of circumstances took place since Brandy was named guardian. *Id.* ("Any doubts which may arise from the incompleteness of the record will be resolved against the appellant"). Moreover, the record that is available supports that a material change in circumstances occurred. The statement Brandy executed said she was experiencing difficulties with Heather and her family, which was causing stress to both her and Jonathon. Significantly, as memorialized in her statement, Brandy "transferred" physical custody of Jonathon to David and intended to relinquish her role as guardian. We find this fact alone constitutes a material change in circumstances.

¶ 15    Having established a material change of circumstance by a preponderance of the evidence, we next address whether Brandy established, by clear and convincing evidence, that termination of her guardianship would not be in Jonathon's best interests. As stated above, we are hindered by the incomplete record. However, the testimony of David and the GAL provide a basis for the best interests determination.

¶ 16    The first factor, Jonathon's interaction and interrelationship with Heather and her family, favors termination of the guardianship with Brandy. David said Jonathon "love[d] everything" he did. David was able to coordinate with Heather to arrange Jonathon's school schedule and they appeared to have reached an arrangement that worked for Jonathon. Other family members were also involved in Jonathon's care. Sara helped David and Heather with Jonathon and he would spend the night at her house at times when David had to work.

¶ 17    The ability of the parent to provide a safe and nurturing environment is the second factor. This case is factually unusual in that termination of Brandy's guardianship did not result in Jonathon's return to his mother but with a new guardianship appointing Jonathon's uncle. Jonathon was doing well in David's care. David provided a suitable environment for Jonathon and has exhibited concern for him. He has contacted Jonathon's teacher about the best educational path for Jonathon. He arranged his home to make it attractive for a child. David took Jonathon on vacation to spend "more quality time" with him. By contrast, according to the allegations in Heather's petition, Brandy's living conditions were overcrowded, requiring Jonathon to share a bedroom with his guardian, and Brandy failed to continue with Jonathon's schooling or follow up with his medical treatment. The GAL testified that Brandy's mother lived with her, and Heather alleged Brandy's boyfriend also lived there. The GAL opined that Jonathon would be happy wherever he was wanted but he would be safest with Brandy. The GAL based this opinion on the fact that Heather's family was lax in complying with the court's order prohibiting contact between Jonathon and Anthony. However, the GAL also acknowledged that during the course of her guardianship, Brandy sent Jonathon to live with one of Heather's family members. She could not guarantee Brandy would not do so again. This factor also favors termination.

7

¶ 18    The third factor considers the parties' and the minor's relative stability. As discussed above, Brandy experienced instances where she could not continue to care for Jonathon. Jonathon was admitted into the hospital for psychiatric care three times during Brandy's guardianship, according to the GAL. Although the GAL opined that Brandy was more consistent with Jonathon's medical care, she admitted Heather and her family were making "late efforts" in ensuring Jonathon was current with his medical treatment. According to David, since coming into his care, Jonathon was on track with his doctors, medical treatment and follow-up care. He was attending school. David spoke to Jonathon's teacher, who felt he would be better served by staying in his current school program so David arranged for Jonathon to do so despite living out of district. David felt confident he was able to handle Jonathon. The GAL recognized that Jonathon "love[d] spending time" with David, but expressed concerns about David's work schedule, which required Jonathon to wake in the early morning hours and go the Heather's home until it was time for school. According to David, Jonathon often spent the night at Heather's house when he was working night shift, thus, the GAL's concerns were alleviated.

¶ 19    We look at Jonathon's adjustment to his home, school and community, including the time living with Heather and with Brandy and David as guardians under the fourth factor. Brandy began her role as guardian in June 2019. In May 2020, she allowed David to take custody of Jonathon. During the 11 months Jonathon was in Brandy's care, he was hospitalized on several occasions and sent to Heather or her family also on several occasions. Jonathon has been in David's continual care since custody was "transferred." As discussed above, David has managed to keep Jonathon in his familiar school district based on the recommendation of Jonathon's teacher. David ensured that his home was arranged so Jonathon had things "around the house to keep him occupied."

8

When David's work schedule did not allow him to be home with Jonathon, Heather and Sara have stepped in to fill the childcare gap. This factor favors termination.

¶ 20 Finally, we look at the visitation between Heather and Jonathon and Brandy's ability to facilitate it as the last factor. Brandy's relationship with Heather and her family remained strained. Indeed, Brandy cited difficulties with Heather and her family as the reason she allowed Jonathon to live with David. Heather and David were able to cooperate and coordinate Jonathon's care, with David facilitating Heather's time with Jonathon. This factor also supports termination.

¶ 21 The trial court found that Jonathon's best interests would be served by terminating Brandy's guardianship and appointing David as guardian. The trial court was in the best position to assess the witnesses and weigh the evidence and is afforded discretion in its determination. *In re Guardianship Estate of Tatyanna T.*, 2012 IL App (1st) 112957, ¶ 35 (citing *In re Estate of Michalak*, 404 Ill. App. 3d 75, 96 (2010)). We agree with its conclusion and affirm the termination of Brandy's guardianship.

¶ 22                                    CONCLUSION

¶ 23 For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed.

¶ 24 Affirmed.